## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| EMILY KARRICK on behalf of herself and all others similarly situated, | Case No. 3:24-cv-02807 |
| Plaintiff | **CLASS ACTION COMPLAINT** |
| v. | |
| LANDMARK ADMIN, LLC and LIBERTY BANKERS INSURANCE GROUP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Emily Karrick ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Action against Defendants Landmark Admin, LLC ("Landmark") and Liberty Bankers Insurance Group ("Liberty") (collectively "Defendants") for their failure to properly safeguard their protected health information and personally identifiable information stored within Defendants' information network. Plaintiff's allegations are based on personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys.

## <u>INTRODUCTION</u>

1.      This class action arises out of the recent data breach (the "Data Breach") involving Defendants, resulting from their failure to properly secure, protect, and safeguard sensitive and personal identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of Plaintiff and Class Members.

2.      Landmark, a limited liability company, is a third-party administrator for various insurance carriers.  Based in Brownwood, Texas, Landmark provides personalized third-party administrative solutions for life insurance and annuity companies, offering a range of services, including policy tax reporting, policy accounting, regulatory reporting assistance, reinsurance support, and web access for agents.

3.     Liberty Bankers Insurance Group ("Liberty") is a trade name of Liberty Bankers Life Insurance Company, Capital Life Insurance Company, and American Benefit Life Insurance Company, all of which are headquartered in Dallas, Texas and their affiliates, including American Monumental Life Insurance Company, headquartered in Baton Rouge, Louisiana, and Continental Mutual Insurance Company, headquartered in Upper Darby, Pennsylvania. Liberty offers a variety of retirement, life, and health insurance policies and purports to have "provided innovative and thoughtful financial plans" while being "dedicated to bringing a sense of security and peace of mind to all our customers … for life."[1]

4.     To effectively manage their services and coverage for Plaintiff and Class Members, Defendants' store and maintain significant sensitive Private Information.[2] Consequently, Defendants owe a duty to the individuals, for or respecting whom they provide services or otherwise administer, to safeguard, protect and maintain the privacy and security of their Private Information.

5.     This duty arises because it is foreseeable that the exposure of Private Information to unauthorized persons, especially to perpetrators of cyberattacks with nefarious intentions, will result in harm to the affected individuals, including, but not limited to: the invasion of their private data, the sale of their Private Information to facilitate identity theft, exposure to scams or phishing

---

[1]     www.LBIG.com/about-us, last visited November 6, 2024.

[2]     Protected Health Information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act. Inter alia, PHI includes test results, procedure descriptions, diagnoses, personal or family medical histories, and data points applied to a set of demographic information for a particular patient. PHI is inclusive of and incorporates personally identifiable information. Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers). PII and PHI, in whole or in part, are collectively "Private Information."

frauds, loss of time, economic damages as affected individuals scramble to protect their identities, and/or the countless ways these individuals' peace of mind is destroyed knowing their information is no longer secured.

6.    Individuals expect their data to be securely protected. Unfortunately, their trust is violated when entities, like Defendants, fail to maintain adequate cyber-security and consequently expose them to cyberattacks.

7.    The U.S. Department of Health and Human Services ("HHS") has warned about the threat posed by ongoing cyber-attacks.  For example, the U.S. Cybersecurity and Infrastructure Agency, the Federal Bureau of Investigation ("FBI"), and the HHS issued a joint alert on a specific cybercrime group targeting organizations that held PHI.[3]

8.    Despite being on notice that it was storing sensitive Private Information that is valuable and vulnerable to cyber attackers, Defendants failed to take basic security precautions that could have protected Plaintiff's and Class Members' Private Data.

9.    On or about May 13, 2004, Landmark became aware of suspicious activity that occurred on its network servers and system.  Thereafter, Landmark commenced a forensic investigation, which determined and concluded by no later than July 24, 2024, that there was unauthorized access to Landmark's network resulting in data being exfiltrated from its system between May 13, 2024 and June 17, 2024 (the "Data Breach").

10.    Commencing on or about October 23, 2024, many months after the Data Breach discovered by Landmark in May, 2024, Defendants Landmark began to send a Notice of Data Breach letter (the "Notice Letter" or "Notice") to affected individuals, acknowledging the unauthorized access occurring from May 13, 2024 and June 17, 2024, by which the unauthorized party exfiltrated data from its system.

---

[3]    Arghire, I. et al., *US Healthcare Organizations Warned of 'Daixin* Team' Ransomware Attacks, SECURITYWEEK (Oct. 24. 2022), https://www.securityweek.com/us-healthcare-organizations-warned-daixin-team-ransomware-attacks/, last visited on November 6, 2024.

11.    The cyber-thieves were able to access Landmark's network and systems, and obtained access to the types of information that federal and state law require companies like Defendants to protect, including, but not limited to: names, tax identification numbers, passport numbers and driver's license numbers, and medical and/or health information.

12.    The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Private Information. Defendants (a) failed to take adequate and reasonable measures to ensure the security of its databases and IT systems; (b) concealed or otherwise omitted the material fact that they did not have systems in place to safeguard Private Information; (c) failed to take available steps to detect and prevent the Data Breach; (d) failed to monitor its databases and IT systems, and to timely detect the Data Breach; and (e) failed to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

13.    Due to Defendants' negligent and inadequate security practices, and other data security shortcomings, affected Class Members and Plaintiff face an ongoing threat of repeated harm, and are still at risk of being targets of fraud, identity theft, and misuse, fraudulent opening of new financial accounts in their names, taking out fraudulent loans, using their information to obtain government benefits, filing fraudulent tax returns, and filing false medical claims.

14.    Plaintiff and Class Members retain a significant interest in ensuring that their Private Information, which remains in Defendants' possession, is protected from further breaches, and seek to remedy the harms suffered as a result of the Data Breach.

15.    Plaintiff, individually, and on behalf of similarly situated persons, seeks to recover damages, equitable relief, including injunctive relief designed to prevent a reoccurrence of the Data Breach and resulting injuries, restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies deemed proper.

## **PARTIES**

**Plaintiff Emily Karrick**

16.     Plaintiff Emily Karrick is, and at all relevant times was, a resident of Centralia, Illinois. Believing that Defendant Liberty would implement and maintain reasonable security and practices to protect customers' personal information Plaintiff Karrick provided Liberty with her Private Information including her name, SSN, driver's license and passport number, past and current residences, and her full medical history including, but not limited to, all prescriptions and procedures throughout Plaintiff's life, and personal health insurance policy information.

17.     Defendants retained Plaintiff's Private Information, collected by Liberty, in the custody and control of Landmark.

18.     In October 2024, Plaintiff Karrick received the Notice Letter from Defendant Landmark notifying her that her PII was affected by the Data Breach. Plaintiff Karrick has spent several hours monitoring her financial accounts as a result of the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Karrick otherwise would have spent on other activities, such as work and/or recreation.

19.     Plaintiff Karrick plans to take additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her financial accounts for any unauthorized activity.

20.     Plaintiff Karrick reasonably expected that Defendants would safeguard her Private Information. Plaintiff Karrick would not have trusted any such entity with her Private Information if she knew that her information would be at risk. Plaintiff Karrick has suffered irreparable damage and has been placed at a heightened risk of fraud or identity theft as a result of the Data Breach.

**Defendants**

21.     Defendant Landmark is a limited liability company with its principal place of business located at 5750 County Road 225, Brownwood, Texas 76801.  The registered agent for service of process is Thomas A. Munson, located at 5750 County Road 225, Brownwood, Texas 76801.  Defendants Landmark is a citizen of Texas.

5

22.     Defendant Liberty is an insurance group that includes numerous insurance companies, including American Monumental Life Insurance Company, Pellerin Life Insurance Company, American Benefit Life Insurance Company, Liberty Bankers Life Insurance Company, Continental Mutual Insurance Company, and Capital Life Insurance Company.

23.     Defendant Liberty has its principal place of business located at 1605 Lindon B. Johnson Freeway, Suite 700, Dallas, Texas 75234.

24.     The true names and capacities of persons or entities, whether individual, corporate, associated or otherwise, who may be responsible for some of the claims alleged herein beyond the above-named Defendants, are currently unknown to Plaintiff.

25.     Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the responsible parties when their identities become known.

## JURISDICTION AND VENUE

26.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00, consists of putative class membership of greater than 100 members, and is a class action in which some of the members of the Class, are citizens of states different than that of Defendants.

27.     The court has personal jurisdiction over Defendants and, additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are authorized to conduct business within this District, and/or maintain their principal place of business in this District, have intentionally availed themselves of the laws in this District, and conduct substantial business, including acts underlying the allegations of this complaint, in this District.

## FACTUAL ALLEGATIONS

A. **Plaintiff and Class Members Entrusted Their Private Information Under a Promise of Protection and Security**

28.     Plaintiff and Class Members are current and former customers Liberty and Landmark.

29.     In the course of their relationship, customers at Landmark's clients, including Plaintiff and Class Members, provided Defendants with at least the following: names, driver's license numbers, tax identification numbers, and other sensitive information.

30.     Upon information and belief, in the course of collecting Private Information from Plaintiff and Class Members, Defendants promised to provide confidentiality and adequate security for the data it collected from them through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

31.     Assuring its customers, Liberty's website states that:

> We will take appropriate steps to protect all information you share with us. Whenever you provide the site with Personal Data, we will take commercially reasonable steps to establish a secure connection with your web browser.
>
> The site contains secured and non-secured sections. Inherent in the use of the Internet and Internet related technologies is some risk of disclosure of information, including without limitation, personal data you supply. Your use of this site and your entry of information are at your own risk. We cannot accept responsibility and expressly disclaims all liability for damage or injury that you may incur or that may result from your use of this site or the interception of information you provide, including without limitation, personal data, by a third party.[4]

32.     Plaintiff and the Class Members, as customers of Defendant Landmark's clients, including Liberty, relied on these promises and relied on these sophisticated business entities to keep their sensitive Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Consumers, in general, demand security to safeguard their Private Information.

B. **Data Breaches and the Market for Private Information**

---

[4]     https://www.lbig.com/privacy-policy, last visited November 6, 2024.

33.    Data breaches in the United States have become ubiquitous, with the goal of criminals being to monetize the stolen data.[5]

34.    When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data—including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[6]

35.    The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29 percent spent a month or more resolving problems" and that resolution of those problems could take more than a year.[7]

36.    The U.S. Government Accountability Office ("GAO") has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[8]

37.    In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[9]

---

[5]    Ani Petrosyan, Number of Data Records Exposed Worldwide From 1st Quarter 2020 to 3rd Quarter 2022, STATISTA (Aug. 20, 2024), https://www.statista.com/statistics/1307426/number-of-databreaches-worldwide, last visited on November 6, 2024 .

[6]    2017 Annual Data Breach Year-End Review, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wpcontent/uploads/images/breach/2017Breaches/2017AnnualData BreachYearEndReview.pdf.

[7]    Victims of Identity Theft, 2014, U.S. DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE STATISTICS (Nov. 13, 2017) https://bjs.ojp.gov/content/pub/pdf/vit14.pdf, last visited on November 6, 2024.

[8]    Data Breaches: Range of Consumer Risks Highlights Limitations of Identity Theft Services, U.S. GOV'T ACCOUNTABILITY OFF., https://www.gao.gov/assets/700/697985.pdf, last visited on November 6, 2024.

[9]    *Id.*

38.     PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000-$1,200 on the dark web and the legitimate data brokerage industry is valued at more than $250 billion.[10]

39.     PHI data is particularly valuable because unlike other personal information, such as credit card numbers which can be quickly changed, medical data is static. This is why companies possessing medical information, like Defendants, are targeted by cyber-criminals.[11]

40.     A 2021 report by Invisibly, a team of application developers focused on reclaiming users' data, found that personal medical information is one of the most valuable pieces of information within the market for data. The report noted that "[i]t's worth acknowledging that because health care records often feature a more complete collection of the patient's identity, background, and [PII], health care records have proven to be of particular value for data thieves." While a single SSN might go for $0.53, a complete health care record sells for $250 on average.[12]

---

[10]     Ryan Smith, *Revealed: How Much is Personal Data Worth on the Dark Web?*, INSURANCE BUSINESS MAGAZINE, https://www.insurancebusinessmag.com/ca/news/cyber/revealed--how-much-ispersonal-data-worth-on-the-dark-web-444455.aspx, last visited November 6, 2024; see also Maria LaMagna, The Sad Truth About How Much Your Google Data is Worth on the Dark Web, MARKETWATCH, https://www.marketwatch.com/story/spooked-by-the-facebook-privacy-violationsthis-is-how-much-your-personal-data-is-worth-on-the-dark-web-2018-03-20, last visited November 6, 2024; Emily Wilson, The Worrying Trend of Children's Data Being Sold on the Dark Web, THE NEXT WEB (Feb. 23, 2019), https://thenextweb.com/news/children-data-sold-the-dark-web, last visited November 6, 2024.

[11]     Caroline Humer & Jim Finkle, Your Medical Record is Worth More to Hackers Than Your Credit Card, REUTERS (Sept. 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/yourmedical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924.

[12]     *How Much is Your Data Worth? The Complete Breakdown for 2024*, INVISIBLY (Jul. 13, 2021), https://www.invisibly.com/learn-blog/how-much-is-data-worth/.

41.     Medical records are even worth more than an SSN, credit card, and driver's license combined, according to federal officials. They estimate that medical records can go for anywhere between $250 to $1,000.[13]

42.     In this black market, criminals seek to sell stolen data to identity thieves who desire the data to extort and harass victims, take over victims' identities in order to open financial accounts, and otherwise engage in illegal financial transactions under the victims' names.

43.     Medical information in particular is extremely valuable to identity thieves, and thus, the medical industry has also experienced disproportionally higher numbers of data theft events than other industries. According to a report by the Health Insurance Portability and Accountability Act ("HIPAA") Journal, "healthcare data breach statistics clearly show there has been an upward trend in data breaches over the past nine (9) years, with 2018 seeing more data breaches reported than any other year since records first started being published."[14]

44.     A study done by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that most victims of medical identity theft were forced to pay out of pocket costs for healthcare they did not receive to restore coverage.[15]  Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

C.     **The Sensitivity of Customers' Private Information Demands Heightened Protection**

---

[13]     Kate Wilkinson, *RI Hospitals Fight Cyberattacks on 'Almost a Daily Basis'*, WPRI (Oct. 10, 2023), https://www.wpri.com/target-12/ri-hospitals-fight-cyberattacks-on-almost-a-daily-basis/.

[14]     Steve Adler, *Healthcare Data Breach Statistics*, HIPAA JOURNAL (Aug. 23, 2024), https://www.hipaajournal.com/healthcare-data-breach-statistics/.

[15]     See Elinor Mills, Study: *Medical Identity Theft is Costly for Victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/.

45.     Entities in the healthcare industry are popular targets for cyberattacks and require top tier security measures to protect Private Information, especially given that these databases store sensitive patient records.

46.     The Ponemon Institute, an expert in the annual state of cybersecurity, indicated in 2020 that organizations storing PHI were top targets for cyber-attacks. In fact, Defendants has been on notice for years that PHI is a prime target for scammers due to the amount and value of confidential patient information maintained. In 2019 alone, numerous entities in the healthcare sector suffered high-profile data breaches, including Quest Diagnostics and LabCorp. Defendants had resources for years to address its data security.[16]

47.     In a survey released by Ponemon Institute in January 2023, nearly half of respondents (47 percent) said their organizations experienced a ransomware attack in the past two years, up from 43% in 2021. And 45 percent of respondents reported complications from medical procedures due to ransomware attacks, up from 36 percent in 2021.[17]

48.     Countless victims impacted by the Data Breach now face a constant threat of being repeatedly harmed, including but not limited to living the rest of their lives knowing that criminals can compile, build, and amass profiles on them for decades – exposing them to a continuing threat of identity theft, disclosure of Private Information, threats, extortion, harassment and phishing scams, and the attendant anxiety from not knowing how one's information will be used when it comes into nefarious individuals' hands.

49.     Data breaches of this caliber can result in the exposure of extremely sensitive information about children's private medical histories, medical conditions, psychological

---

[16]     Defendants & Associates Experiences Data Breach Following Ransomware Attack, JD SUPRA (Dec. 15, 2023), https://www.jdsupra.com/legalnews/Defendants-associates-experiences-data-1137265/.

[17]     Ron Southwick, *California Medical Group Discloses Ransomware Attack, More Than 3 Million Affected*, CHIEF HEALTHCARE EXECUTIVE (Feb. 10, 2023), https://www.chiefhealthcareexecutive.com/view/california-medical-group-discloses-ransomwareattack-more-than-3-million-affected.

assessments, psychiatric evaluations, location of schools and residences, and much more, which poses great dangers on its own. The FBI has warned that "widespread collection of student data could have privacy and safety implications if compromised or exploited."[18]  According to the FBI, malicious use of sensitive student data "could result in social engineering, bullying, tracking, identity theft, or other means for targeting children."[19]  On top of privacy and safety implications, children must also live their entire lives knowing private, sensitive information about their medical histories or conviction records is subject to public exposure at any time.

50.    Due to the special risks associated with individuals' data breaches and the increasing frequency with which they are occurring, it is imperative for entities like Defendants to routinely: (a) monitor for system breaches, cyberattacks and other exploitations; and (b) update their software, security procedures, and firewalls.

### D.    *Data Breaches Are Preventable*

51.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[20]

52.    To prevent and detect cyber-attacks and/or ransomware attacks Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework

---

[18]    *Education Technologies: Data Collection and Unsecured Systems Could Pose Risks to Children*, FEDERAL BUREAU OF INVESTIGATION (Sept. 13, 2018), https://www.ic3.gov/media/2018/180913.aspx .

[19]    *Id.*

[20]    *Id.*

(SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. Ifa user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted Via email. Consider using Office Viewer software to open Microsoft Office files transmitted Via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[21]

---

[21]     *Id*. at 3-4.

- To prevent and detect cyber-attacks or ransomware attacks Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

    **Secure internet—facing assets**

    - Apply latest security updates
    - Use threat and vulnerability management
    - Perform regular audit; remove privileged credentials;

    **Thoroughly investigate and remediate alerts**

    - Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[22]

53.    Given that Defendants were storing the sensitive Private Information of current and former customers of Liberty, Defendants could and should have implemented all of the above measures to prevent and detect cyberattacks.

54.    The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of at least tens of thousands of individuals, including that of Plaintiff and Class Members.

E.    ***Defendants Were and Are Well Aware of the Threat of Cyber Theft and Exfiltration in Healthcare Related Industries***

55.    Plaintiff and Class Members were required to entrust Defendants with highly sensitive and confidential Private Information.  Defendants, in turn, collected that information and assured customers that they were acting to protect that Private Information and to prevent its disclosure.

56.    Defendants could have prevented the Data Breach by assuring that the Private Information at issue was properly secured.

57.    Defendants' overt negligence in safeguarding Plaintiff's and Class Members' Private Information is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.  Further, as entities in the insurance, insurance services, and related industries, Defendants were on notice that such companies are targets for data breach hackers and cyber-thieves.

58.    Hackers prey on companies that collect and maintain sensitive information, including healthcare, insurers, and related entities. Companies like Defendants' have been aware

---

[22]    See Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), available at: https://www.microsoft.com/security/blog/ZO2O/03/05/human-operated-ransomware-attacks-a-preventable-disaster/, last accessed November 6, 2024.

of this, and the need to take adequate measures to secure their systems and information, for a number of years. In 2021 alone, approximately 330 breaches targeting healthcare providers occurred.[23] The steady growth of hacks of healthcare service providers is no surprise and can be tied to two significant factors, (1) the failure of insurance and insurance services providers, like Defendants, to adequately protect patient data and (2), the substantial value of the sensitive PII entrusted to insurance and insurance service providers.

59.     In 2021, 1,862 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, an increase of 68% over 2020 and a 23% increase over the previous all-time high.[24] These data breaches exposed the sensitive data of approximately 294 million people. *Id.*

60.     Companies like Defendants' are well aware of the risk that data breaches pose to consumers, especially because both the size of its customer base and the fact that the PII that it collects and maintains is profoundly valuable to hackers.

61.     It can be inferred from the Data Breach that Defendants either failed to implement, or inadequately implemented, information security policies or procedures in place to protect Representative Plaintiff's and Class Members' PII.

62.     Upon information and belief, prior to the Data Breach, Defendants were aware of their security failures but failed to correct them or to disclose them to the public, including Plaintiff and Class Members.

63.     The implementation of proper data security processes requires affirmative acts. Accordingly, Defendants knew or should have known that it did not make such actions and failed to implement adequate data security practices.

64.     Because Defendants failed to comply with industry standards, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is necessary to

---

[23]     ITRC_2021_Data_Breach_Report.pdf (idtheftcenter.org) at 6. (last visited on November 6, 2024).

[24]     See *supra* note 12.

ensure Defendants' approach to information security is adequate and appropriate. Upon information and belief, Defendants still maintains the PII of Plaintiff and Class Members; and without the supervision of the Court via injunctive relief, Representative Plaintiff's and Class Members' PII remain at risk of subsequent data breaches.

65.     In addition to its obligations under state and common laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in Defendants' possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and Class Members.

66.     Defendants owed a duty to Plaintiff and Class Members to ensure that the Private Information it collected and was responsible for was adequately secured and protected.

67.     Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PII and financial information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

68.     Defendants owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach that impacted the Private Information it collected and was responsible for in a timely manner.

69.     Defendants owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

70.     Defendants owed a duty to Plaintiff and Class Members to disclose if its data security practices was inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendants.

71.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

72.    Defendants owed a duty to Plaintiff and Class Members to mitigate the harm suffered by the Representative Plaintiff and Class Members as a result of the Data Breach.

73.    Defendants collect, receive, and access consumers' extensive individually identifiable information. These records include names, SSNs, passport and driver's license numbers, as well as PHI in the form of general health information.

74.    Defendants retain and store this Private Information and derive a substantial economic benefit from said Private Information.

75.    Plaintiff and Class Members provided their Private Information with the reasonable expectation and mutual understanding that recipient Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

76.    Plaintiff and Class Members relied on Defendants to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members, who value the confidentiality of their Private Information and demand security to safeguard their Private Information, took reasonable steps to maintain the confidentiality of their PII.

77.    Defendants derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. In addition to obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendants assumed legal and equitable duties, and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

78.    At all times material, Defendants were under a duty to adopt and implement reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. And to that end, Defendants also had a legal duty created by contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

Given the highly sensitive nature of the Private Information that Defendants possessed and the sensitivity of the services they provided, Defendants had a duty to safeguard, protect, and encrypt Plaintiff's and Class Members' PII.

79.     By obtaining, collecting, storing, and transmitting the Private Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

80.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendants to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

81.     Defendants via the Privacy Policy, either directly or indirectly promised and assumed a duty to maintain and protect the Private Information of Plaintiff and the Class, demonstrating an understanding of the importance of securing Private Information.

82.     Defendants' failure to safeguard the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

83.     Defendants were not permitted to disclose Plaintiff's and Class Members' Private Information for any reason that would apply in this situation.  The disclosure of Plaintiff's and Class Members' Private Information via the Data Breach was not permitted per Defendants' own policies.

84.     Defendants failed to use reasonable security procedures and practices appropriate to safeguard the sensitive, unencrypted information it was maintaining of Plaintiff and Class Members, consequently enabling and causing the exposure of Private Information in the Data Breach.

**F.      Defendants Violated FTC Guidelines Prohibiting Unfair or Deceptive Acts**

85.     The Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") prohibits businesses from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See e.g., FTC v. Wyndham Corp.*, 799 F.3d 236 (3d Cir. 2015).

86.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[25]

87.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[26]

88.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

89.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[25]See   https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited November 6, 2024).

[26] See https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited November 6, 2024).

90.     Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

91.     In that regard, Defendants were at all times fully aware of its obligations to protect Plaintiff's and Class Members' Private Information because of their business model of collecting Private Information and storing such information. Defendants were also aware of the significant repercussions that would result from their failure to do so.

92.     Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that they and any of their affiliates would comply with their obligations to keep such information confidential and secure from unauthorized access.

93.     Had Defendants disclosed to Plaintiff and Class Members that its data systems were not secure and were vulnerable, Plaintiff would not have entrusted such entities with such sensitive information. In fact, Defendants would have been forced to adopt reasonable data security measures and to comply with state and federal law.

94.     Defendants knew or should have known that Plaintiff and Class Members would reasonably rely upon, and trust Defendants' express and implied promises regarding the security and safety of its data and systems.

95.     By collecting victims' sensitive Private Information and failing to protect it by maintaining inadequate security systems, failing to properly archive the Private Information, allowing access of third parties, and failing to implement security measures, Defendants caused harm to Plaintiff and all affected individuals.

### G.     The Impact of the Data Breach on Plaintiff and the Class

96.     As explained above, exposure of Private Information to the wrong people can have profound consequences. The impact of identity theft can have ripple effects, which can adversely

affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center

97.      Identity theft can impact an individual's ability to get credit cards and obtain loans, such as student loans or mortgages.[27]  For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

98.      The U.S. GAO found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[28]

99.      There may also be a significant time lag between when personal information is stolen and when it is actually misused. According to the GAO, which conducted a study regarding data breaches:

> *"[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[29]*

100.     Defendants were also aware of the significant repercussions that would result from its failure to protect Private Information and knew, or should have known, the importance of safeguarding the Private Information entrusted to themselves and of the foreseeable consequences in the event of a breach of its data security.  Nonetheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[27]      Identity Theft: The Aftermath 2017, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf, last visited November 6, 2024.

[28]      Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, U.S. GOV'T ACCOUNTABILITY OFF. (June 2007), https://www.gao.gov/new.items/d07737.pdf, last visited November 6, 2024.

[29]      Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, U.S. GOV'T ACCOUNTABILITY OFF.  (June 2007), https://www.gao.gov/new.items/d07737.pdf, last visited November 6, 2024.

101.    Identity theft associated with data breaches is particularly pernicious due to the fact that the information is made available, and has usefulness to identity thieves, for an extended period of time after it is stolen.  As a result, victims suffer both immediate and long-lasting exposure and are susceptible to further injury over the passage of time.

102.    As a direct and proximate result of Defendants' conduct, Plaintiff and the other Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  They must now be vigilant and continuously review their credit reports for suspected incidents of identity theft, educate themselves about security freezes, fraud alerts, and take steps to protect themselves against identity theft, which will extend indefinitely into the future.

103.    Even absent any adverse use, consumers suffer injury from the simple fact that Private Information has been stolen. When such sensitive information is stolen, accounts become less secure, and the information once used to sign up for bank accounts and other financial services is no longer as reliable as it had been before the theft.  Thus, consumers must spend time and money to re-secure their financial position and rebuild the good standing they once had in the community.

104.    Plaintiff and the other Class Members also suffer ascertainable losses in the form of opportunity costs and the time and costs reasonably incurred to remedy or mitigate the effects of the Data Breach, including:

    A.    Monitoring compromised accounts for fraudulent charges;

    B.    Purchasing credit monitoring and identity theft prevention;

    C.    Taking trips to banks and waiting in line to verify their identities in order to restore access to compromised accounts;

    D.    Placing freezes and alerts with credit reporting agencies;

    E.    Spending time on the phone with or at financial institutions to dispute fraudulent charges;

F.    Contacting their financial institutions and closing or modifying financial accounts;

G.    Resetting automatic billing and payment instructions from compromised credit and debit cards to new cards;

H.    Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised accounts that had to be cancelled; and,

I.    Closely reviewing and monitoring financial accounts and credit reports for unauthorized activity for years to come.

105.    Moreover, Plaintiff and the other Class Members have an interest in ensuring that Defendants implement reasonable security measures and safeguards to maintain the integrity and confidentiality of the Private Information, including making sure that the storage of data or documents containing Private Information is not accessible by unauthorized persons, that access to such data is sufficiently protected, and that the Private Information remaining in the possession of Defendants is fully secure, remains secure, and is not subject to future theft.

106.    As a further direct and proximate result of Defendants' actions and inactions, Plaintiff and the other Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

107.    As a direct and proximate result of Defendants' wrongful actions or omissions here, resulting in the Data Breach and the unauthorized release and disclosure of Plaintiff's and other Class Members' Private Information, Plaintiff and all Class Members have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including, *inter alia*, (i) the resulting increased and imminent risk of future ascertainable losses, economic damages and other actual injury and harm, (ii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and other personal accounts—for which they are entitled to compensation; and (iii) emotional distress as a result of having their Private Information accessed and exfiltrated in the Data Breach.

108.    But for Defendants' unlawful conduct, scammers would not have access to Plaintiff's and Class Members' Private Information. Defendants' unlawful conduct has directly and proximately resulted in a widespread threat of digital attacks against Plaintiff and Class Members.

109.    Breach victims have spent significant time monitoring personal accounts (banking, credit monitoring, financial applications, and even other applications/accounts that may be attacked) for fraudulent activity. Many breach victims have had to change their passwords and associated accounts which may be connected to various pieces of stolen Private Information. Plaintiff have been monitoring their credit activity, living in constant fear and apprehension of further attacks.

110.    Plaintiff and other Class Members also have spent significant time researching and comparing various identity protection services, such as Equifax and Experian. Plaintiff have been placed on hold or have been speaking to representatives for hours each day in anticipation of taking their data protection into their own hands, a measure which should be unnecessary. Had Plaintiff and Class Members been able to trust that Defendants would vigilantly protect their data, they would not have to take drastic action, and invest significant time and energy, to protect their Private Information themselves.

111.    Phishing and other targeted attacks result from data breaches that disclose Private Information. Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing scams are frequently successful, and the FBI reported that Americans lost approximately $57 million to such scams in 2019 alone.[30]

---

[30]    *How to Recognize and Avoid Phishing Scams*, FEDERAL TRADE COMMISSION (Sept. 2022), https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams.

112.    Given the highly sensitive nature of the information stolen, and its dissemination to unauthorized parties, Plaintiff has already suffered injury and remain at a substantial and imminent risk of future harm.

113.    Plaintiff and Class Members are now forced to research and subsequently acquire credit monitoring and reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff anticipates substantial out-of-pocket expenses to pay for these services.

114.    In sum, Plaintiff and similarly situated consumers have been injured as follows due to the Data Breach:

    a.    Theft of their Private Information and the resulting loss of privacy rights in that information;

    b.    Improper disclosure of their Private Information;

    c.    Loss of value of their Private Information;

    d.    The amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures;

    e.    Defendants' retention of profits attributable to Plaintiff's and other Class Members' Private Information that Defendants failed to adequately protect;

    f.    Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff and Class Members are now exposed to;

    g.    Ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this Data Breach;

    h.    Emotional distress, and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this Data Breach.

**H.    The Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary**

115.     Given the type of targeted attack in this case, sophisticated criminal activity, and the type of Private Information involved, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes —e.g., opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

116.     Such fraud may go undetected until debt collection efforts commence months, or even years, later. An individual may not know that their Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected triggering potential unpleasant interaction with the IRS.

117.     Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

118.     The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendants' Data Breach.

**I.**     ***Defendants' Delayed Notification of the Breach***

119.     Time is of the essence when highly sensitive Private Information is subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired Private Information of Plaintiff and Class Members is likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their Private Information, and face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing critical PII and/or PHI.

120.    Despite this knowledge and understanding, Defendants did not timely inform affected individuals, including Plaintiff and Class Members, about the Data Breach.

121.    Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.6% of U.S.-based workers are compensated on an hourly basis, while the other 44.5% are salaried.[31]

122.    According to the U.S. Bureau of Labor Statistics' 2022 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per week; leisure time is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"[32, 33] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

123.    Plaintiff and Class Members are now deprived of the choice as to how to spend their valuable free hours and seek remuneration for the loss of valuable time as another element of damages.

## CLASS ALLEGATIONS

124.    Plaintiff bring this action on their own behalf and on behalf of a nationwide class defined as follows:

### Nationwide Class

---

[31]    U.S. BUREAU OF LABOR STATISTICS, Wage Worker Survey, available at https://www.bls.gov/opub/reports/minimum-wage/2022/home.htm  (last visited November 6, 2024); see also U.S. BUREAU OF LABOR STATISTICS, Employment And Average Hourly Earnings By Industry, available at https://www.bls.gov/news.release/empsit.t19.htm (last visited November 6, 2024) (finding that on average, private-sector workers make $1,216.28 per 40-hour work week).

[32]    See https://www.cnbc.com/2019/11/06/how-successful-people-spend-leisure-time-james-wallman.html?&qsearchterm=James%20Wallman (last visited November 6, 2024).

[33]    *Id.*

All residents of the United States who were notified by Defendants that their PII was or may have been affected in the Data Security Incident. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, Class Counsel, and members of their families; (2) Defendants and its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or its parents, have a controlling interest, and its current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

**Illinois Subclass**

All residents of the state of Illinois who were notified by Defendants that their PII was or may have been affected in the Data Security Incident. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, Class Counsel, and members of their families; (2) Defendants and its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or its parents, have a controlling interest, and its current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

125.    The Nationwide Class and the Illinois Subclass may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court. Collectively, the Nationwide Class and the Illinois Subclass are referred to herein as "Class."

126.    <u>Numerosity</u>:  the class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.  There are over 800,000 Class Members.[34]

127.    Commonality and Predominance: there is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the class was

---

[34]    https://www.forbes.com/sites/larsdaniel/2024/11/02/landmark-admin-data-breach-impacts-800000-insurance-customers/, last visited November 6, 2024.

29

exposed to the same common and uniform breach of Defendants' duty and reliance on Defendants' ability to protect Class Members' data. The questions of law and fact common to the class predominate over questions which may affect individual Plaintiff and Class Members. Common questions of law and fact include, but are not limited to, the following:

      a.  Whether Defendants' failure to implement effective security measures to protect Plaintiff's and Class Members' Private Information was negligent;

      b.  Whether Defendants represented to Plaintiff and the Class that it would protect Plaintiff's and Class Members' Private Information;

      c.  Whether Defendants owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

      d.  Whether Defendants breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

      e.  Whether Class Members' Private Information was accessed, compromised, or stolen in the breach;

      f.  Whether Defendants' conduct caused or resulted in damages to Plaintiff and Class Members;

      g.  Whether Defendants failed to notify the public of the breach in a timely and adequate manner;

      h.  Whether Defendants knew or should have known that its systems were vulnerable to a data breach;

      i.  Whether Defendants adequately addressed the vulnerabilities that allowed for the Data Breach; and

      j.  Whether, as a result of Defendants' conduct, Plaintiff and the Class are entitled to injunctive relief.

128.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the proposed class, as Plaintiff and Class Members were harmed by Defendants' uniform unlawful conduct.

129.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the proposed class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

130.    Superiority: a class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually.

131.    The litigation and resolution of Class Members' claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

132.    Plaintiff and Class Members have suffered injury in fact as a result of Defendants' false, deceptive, and misleading representations. Plaintiff would not have sought services from, provided Private Information to, or otherwise have their Private Information provided to Defendants but for the reasonable belief that Defendants would safeguard their Private Information.

133.    The Class is identifiable and readily ascertainable. Notice can be provided to such affected individuals using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines. Further, Defendant Landmark has already identified and sent a letter to each affected Class Member.

134.    Defendants have acted on grounds generally applicable to the entire Class, thereby making final and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

135.    Absent a class action, Defendants will likely retain the benefits of its wrongdoing. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Class Members individually to redress effectively the wrongs done to them by Defendants. Even if Class Members could afford such individual litigation, the court system could not. Absent a representative action, the Class Members will continue to suffer losses and Defendants (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## CAUSES OF ACTION

## COUNT ONE

### NEGLIGENCE

136.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

137.    Defendants owed a duty to Plaintiff and the class to exercise due care in collecting, storing, and safeguarding their Private Information. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that individuals' Private Information was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems that are compliant with industry practices; and (d) promptly detecting and notifying affected parties of a data breach.

138.    Defendants also had a duty to destroy Plaintiff's and Class Members' Private Information within an appropriate amount of time after it was no longer required by Defendants, in order to mitigate the risk of the stale Private Information being compromised in a data breach.

139.    Defendants' duties to use reasonable care arose from several sources, including those described below. Defendants had a common law duty to prevent foreseeable harm to others, including Plaintiff and members of the class, who were the foreseeable and probable victims of any inadequate security practices.

140.    Defendants had a special relationship with Plaintiff and Class Members, which is recognized by laws and regulations, as well as common law. Defendants was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach. Plaintiff and Class Members were compelled to entrust Defendants with their Private Information.

141.    At relevant times, Plaintiff and Class Members understood that Defendants would take adequate security precautions to safeguard that information. Only Defendants had the ability to protect Plaintiff's and Class Members' Private Information stored on Defendants' servers.

142.    Defendants knew or should have known that Plaintiff's and the Class Members' Private Information is information that is frequently sought after by hackers.

143.    Defendants knew or should have known that Plaintiff and the Class Members would suffer harm if their Private Information was leaked.

144.    Defendants knew or should have known that their security systems and policies were not adequate to protect Plaintiff's and the Class Members' Private Information from a data breach, especially in light of the increase in data breaches in the insurance and financial institutions sectors.

145.    Defendants knew or should have known that adequate and prompt notice of the Data Breach was required such that Plaintiff and the class could have taken more swift and effective action to change or otherwise protect their Private Information, rather than notifying affected individuals many months later. Defendants failed to provide timely notice upon discovery of the Data Breach.

146.    Defendants' conduct as described above constituted unlawful breaches of their duty to exercise due care in collecting, storing, and safeguarding Plaintiff's and the Class Members' Private Information by failing to design, implement, and maintain adequate security measures to protect this information. Moreover, Defendants did not implement, design, or maintain adequate measures to detect a data breach when it occurred or adopt sufficient measures to notify affected parties in the event of a data breach.

147.    Defendants' conduct as described above constituted unlawful breaches of their duty to provide adequate and prompt notice of the Data Breach.

148.    Defendants entered a special relationship when Plaintiff and Class Members entrusted Defendants to protect their Private Information. Plaintiff and the class trusted Defendants and, in doing so, provided Defendants with their Private Information, based upon Defendants' representations that they would implement adequate systems to secure the information of Plaintiff and the Class Members.

149.    Defendants breached their duty to implement and maintain reasonable measures to protect Plaintiff's and Class Members' Private Information.

150.    Plaintiff's and Class Members' PII would have remained private and secure had it not been for Defendants' wrongful and negligent breach of their duties. The leak of Plaintiff's and Class Members' Private Information, and all subsequent damages, was a direct and proximate result of Defendants' negligence.

151.    Defendants' negligence was, at least, a substantial factor in causing Plaintiff's and Class Members' Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing the Class Members' other injuries because of the Data Breach.

152.    The damages suffered by Plaintiff and Class Members was the direct and reasonably foreseeable result of Defendants' negligent breach of its duties to adequately design, implement, and maintain security systems to protect Plaintiff's and Class Members' Private Information. Defendants knew or should have known that its security for safeguarding Plaintiff's and Class Members' Private Information was vulnerable to a data breach.

153.    Defendants' negligence directly caused significant harm to Plaintiff and the class.

154.    Specifically, Plaintiff and the Class are now subject to numerous attacks, including various phishing scams and identity theft.

155.    Defendants had a fiduciary duty to protect the confidentiality of their communications with Plaintiff and Class Members by virtue of the explicit privacy representations

Defendants made in dealing with intended beneficiaries through terms of contract and to Plaintiff and Class Members when they sought any additional Private Information to effectuate claims.

156.    Defendants had information relating to Plaintiff and Class Members that they knew or should have known to be confidential.

157.    Plaintiff and Class Members' communications with Defendants about sensitive Private Information and their status as customers were not matters of general knowledge.

158.    Defendants breached their fiduciary duty of confidentiality by designing their policies and data protection systems in a way to allow for a data breach of massive caliber.

159.    At no time did Plaintiff or Class Members give consent to Defendants' conduct.

160.    As a direct and proximate cause of Defendants' actions, Plaintiff and the class suffered damage in that the information they intended to remain private is no longer so and their Private Information was disclosed without their knowledge or consent.

## COUNT TWO

### NEGLIGENCE PER SE

161.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

162.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted, and enforced by the FTC, the unfair act or practice by entities such as Defendants or failing to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendants' duty.

163.    Defendants violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Private Information and not complying with the industry standards.

164.    Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of a data breach that disclosed Plaintiff's, Class Members', and beneficiaries' Private Information to unauthorized third parties.

165. Defendants' violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se. This negligence was, at least, a substantial factor in causing Class Members' Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing Class Members' other injuries as a result of the Data Breach.

166. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect as they are natural persons. In addition, the harm that Class Members have suffered is the type of harm that the FTC Act (and similar state statutes) were intended to prevent. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same or similar harm suffered by Class Members.

167. Defendants also violated other laws in allowing and as a result of the Data Breach, including, but not limited to, HIPAA.

168. As a direct and proximate result of Defendants' violation of law and their negligence, Plaintiff and Class Members have been injured, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## COUNT THREE

### BREACH OF IMPLIED CONTRACT

169. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

170. Defendants provided or provides insurance and insurance-related services to Plaintiff and Class Members, or Plaintiff and Class Members otherwise provided their Private Information to Defendants as prospective customers or in some other capacity.

171. In connection with their business relationship, Plaintiff and Class Members entered implied contracts with Defendants.

172. Pursuant to these implied contracts, Plaintiff and Class Members provided Defendants with their Private Information. In exchange, Defendants agreed, among other things:

(1) to take reasonable measures to protect the security and confidentiality of Private Information; and (2) to protect Private Information in compliance with federal and state laws and regulations and industry standards.

173.    The protection of Private Information was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendants, on the other hand. Had Plaintiff and Class Members known that Defendants would not adequately protect Private Information they would not have done business with Defendants.

174.    Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendants with their Private Information.

175.    Defendants breached its obligations under its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect their Private Information.

176.    The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendants' material breaches of their agreements.

177.    Plaintiff and Class Members were damaged by Defendants' breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Private Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Private Information has been breached; (v) they were deprived of the value of their Private Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

## COUNT FOUR

### BREACH OF CONFIDENCE

178.    Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

179.    At all times during Plaintiff's and Class Member's interactions with Defendants, Defendants were fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' Private Information held by them.

180.    Defendants' relationships with Plaintiff and Class Members were governed by terms and expectations that Plaintiff's and Class Members' Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

181.    Plaintiff and Class Members provided their Private Information to Defendants with the explicit and implicit understanding that Defendants would protect and not permit the Private Information to be disseminated to any unauthorized third parties.

182.    Plaintiff and Class Members provided their Private Information to Defendants with the explicit and implicit understanding that Defendants would take reasonable and industry standard precautions to protect their Private Information from unauthorized disclosure.

183.    Defendants voluntarily received in confidence Plaintiff's and Class Members' Private Information with the understanding that Private Information would not be disclosed or disseminated to unauthorized third parties or to the public.

184.    Due to Defendants' failure to prevent or avoid the Data Breach, Plaintiff's and Class Member's Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

185.    As a proximate result of such unauthorized disclosures, Plaintiff and Class Members suffered damages.

186.    But for Defendants' disclosure of Plaintiff's and Class Member's Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, access, and used by unauthorized third parties.

187.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' inadequate security of Plaintiff's and Class Members' Private

Information. Defendants knew or should have known that their methods of accepting, storing, transmitting, and using Plaintiff's and Class Members' Private Information were inadequate.

188.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) threat of identity theft; (ii) the loss of the opportunity in how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) the continued risk to their Private Information, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect it; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the rest of Plaintiff's and the Class Members' lives.

189.    As a direct proximate result of such unauthorized disclosures, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

<u>**COUNT FIVE**</u>

**INVASION OF PRIVACY**

190.    Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

191.    Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in their Private Information that Defendants failed to adequately protect against compromise from unauthorized third parties.

192.    Defendants owed a duty to Plaintiff and Class Members to keep their Private Information confidential.

193.    Defendants failed to protect, and released to unknown and unauthorized third parties, the Private Information of Plaintiff and Class Members.

194.    By failing to keep Plaintiff's and Class Members' Private Information safe, knowingly utilizing unsecure systems and practices, Defendants unlawfully invaded Plaintiff's and Class Members' privacy by, among others, (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their Private Information from disclosure to unauthorized persons and/or third parties; and (iii) enabling the disclosure of Plaintiff's and Class Members' Private Information without consent.

195.    Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

196.    Defendants knew, or acted with reckless disregard of the fact that, organizations handling PHI are highly vulnerable to cyberattacks and that employing inadequate security software would render them especially vulnerable to data breaches.

197.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted, thereby causing Plaintiff and the Class Members undue harm.

198.    Plaintiff seeks injunctive relief on behalf of the class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## COUNT SIX

### UNJUST ENRICHMENT

199.    Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs. This claim is pleaded in the alternative to the contract-based counts.

200.    Plaintiff and Class Members conferred a monetary benefit on Defendants—namely, they provided and entrusted Defendants with their valuable Private Information. Upon information and belief, Defendants fund their data security measures entirely from payments made on behalf of Plaintiff and the Class Members, who are the intended beneficiaries of a contract between Defendant Landmark and its clients. Accordingly, a portion of such payments made on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

201.    In exchange for this payment, Plaintiff and Class Members were entitled to reasonable measures to protect their Private Information.

202.    Defendants appreciated, accepted, and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from Defendants' conduct toward Plaintiff and Class Members as described herein – namely, (a) Plaintiff and Class Members conferred a benefit on Defendants, Defendants accepted or retained that benefit; and (b) Defendants used Plaintiff's and Class Member's Private Information for business purposes.

203.    Defendants failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not provide full compensation for the benefit provided on behalf of Plaintiff and Class Members provided.

204.    Defendants acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

205.    Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

206.    Under the circumstances, it would be unjust and unfair for Defendants to be permitted to retain any of the benefits conferred on behalf of Plaintiff and the Class.

207.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the Private Information belonging to Plaintiff and Class Members because Defendants failed to implement the data management and security measures that industry standards mandate.

208.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received on behalf of and for the benefit of Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf herself and all others similarly situated, prays for judgment and relief on all cause of action as follows:

A.    That the Court determines that this action may be maintained as a class action, that Plaintiff be appointed as Class Representative, that the undersigned be named as Class Counsel, and that notice of this action be given to Class Members;

B.    That the Court enter an order declaring that Defendants' actions, as set forth in this complaint, violate the laws set forth above;

C.    An order: (1) prohibiting Defendants from engaging in the wrongful acts stated herein; (2) requiring Defendants to implement adequate security protocols and practices to protect consumers' Private Information consistent with the industry standards, applicable regulations, and federal, state, and/or local laws; (3) mandating the proper notice be sent to all affected parties, and posted publicly; (4) requiring Defendants to protect all data collected from Plaintiff and Class Members; (5) requiring Defendants to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendants can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members; (6) requiring Defendants to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of Plaintiff's and Class Members Private Information; (7) requiring Defendants to engage independent third-party security auditors and conduct internal security audit and testing, including simulated attacks, penetration tests, and

audits on Defendants' systems on a periodic basis; (8) requiring Defendants to engage independent third-party security auditors and/or internal personnel to run automated security monitoring; (9) requiring Defendants to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information; (10) requiring Defendants to conduct systematic scanning for data breach related issues; (11) requiring Defendants to train and test their employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the Private Information data; and (12) requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

D.      That the Court award Plaintiff and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

E.      That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendants to which Plaintiff and the Class are entitled, including but not limited to restitution and an Order requiring Defendants to cooperate and financially support civil and/or criminal asset recovery efforts;

F.      That the Court award Plaintiff and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under state law);

G.      That the Court award Plaintiff and the Class their reasonable attorneys' fees and costs of suit;

H.      That the Court award treble and/or punitive damages insofar as they are allowed by applicable laws; and

I.      That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

Dated: November 6, 2024                    Respectfully submitted,

                                           */s/ Bruce W. Steckler*
                                           Bruce W. Steckler
                                           Steckler Wayne & Love, PLLC
                                           12720 Hillcrest Suite 1045
                                           Dallas, TX 75230
                                           Telephone: (972) 387-4040
                                           bruce@swclaw.com

                                           Stephen R. Basser*
                                           Samuel M. Ward*
                                           **BARRACK, RODOS, & BACINE**
                                           600 W Broadway, Suite 900
                                           San Diego, CA 92101
                                           Telephone: (619)230-0800
                                           Facsimile: (619) 230-1874
                                           sbasser@barrack.com
                                           sward@barrack.com

                                           **pro hac vice* application forthcoming